Madam Clerk, please call the next case. 215-1160, Aces-Chavez v. Workers' Compensation Comm'n, R.I.P. You may proceed. Good morning, Riders, Justices, and Counsel. My name is Michael Rothman, and I represent the petitioner in this matter. This is basically a case in which the Commission failed to do its job, failed to weigh the evidence. Instead, it adopted the arbitrator's decision, the Commission's decision, which copied the arbitrator's decision in full, and the arbitrator's decision was based on the respondent's proposed finding verbatim, and the only thing the arbitrator did was add an extrajudicial investigation paragraph to the decision, and then ruled against Aces-Chavez. When one critically looks at the evidence, the only one conclusion that can be reached is that Mr. Chavez suffered an accident which aggravated his CRPS. The decision should be reversed on the review of the record alone, and at a minimum, because of the extrajudicial investigation, a new trial must be ordered before a different arbitrator or Commissioner. Didn't the Commission have some problem with the claimant's credibility? Yes, they did. And isn't it up to them under the law to judge the credibility of the witnesses? Credibility is based also against the amount of evidence. You have to look at the evidence based upon a manifest way of evidence, and you have to look at the reasons they cited to find him not credible, and each of the reasons that they cited him not credible was incorrect. If you look at the, and basically that was determined in their decision in terms of accident, and in that situation they cited five reasons for him not being credible. The first one is that he had a prior workers' compensation settlement. That by itself is not, he admitted he had one. He admitted he had a prior accident, but the defendants argue that it coincided with his new claim. The prior workers' compensation case settled in July 2007. It had nothing to do with the filing of this new claim. Nothing to do with it except the Commission believed in his medical evidence to support that he continued to receive treatment for his leg ever since that time. He has. Right. And he admitted it. All right. Correct. He admitted it. He admitted that he had been treating all the way up through September of 2007, a few days prior to the accident. But he testified that the medical treatment and the medication and the ER treatments that he was receiving was keeping his pain level down to a 3 out of 10. Now, when you look at the medical records for the treatment, if you actually look at the records and not just the decision of the Commission, the medical records show that every time he treated, the pain would be, he would have an exacerbation, the pain would go down to a 0, 2, or a 3, and he would always return back to work. Here's one of the things, assuming that's true, here's one of the things that troubled the Commission, and I think this is significant. It is apparently uncontroverted that the claimant, after falling in his hole and sustaining a serious injury aggravation, did not seek any medical attention for a week following the accident, despite the fact that he would frequently visit the emergency room before the accident. So what do you have to say about that? Rick, what happened was he testified that he had medication from the prior treatments. He was taking the medications from what he had. His wife and his son helped him do the two-child afterwards that he did, and he did present on October 1st to UIC for treatment, at which time they diagnosed a sprained ankle, he had severe swelling, they gave him a boot and gave him naproxen, as well as took him off work. This is the first time he has ever been taken off work for several years prior to the accident. So doesn't it seem strange that he's visiting doctors and emergency rooms on a regular basis, falls in this big hole, seriously hurts his leg, but then for a week he doesn't go in? He's taken medication. He was at the hospital just several days prior, and then they gave him the medication. When you look at the September 21st visit, he went into the hospital because he had run out of medication two days prior. There's a citation in that record where he says that. So he had medication that he already had, and that's basically what they did. They weren't giving him surgery. They weren't giving him infusions. They were giving him his medication. Who's Dr. Holmes? Dr. Holmes is the defendant's IME. And he opined that the claimant's continuing symptoms represented nothing more than a continuation of the prior condition. There was no aggravation of that condition because of the work-related accident. So can't the commission believe Dr. Holmes? Even with an expert, even with a treater, you have to look at the basis of their opinions. If their opinions are flawed, their testimony is ñ you can't just rely on testimony. In Gross, which I cited in our brief, this appellate court reversed the commission's decision, which found that a doctor said that there was no aggravation of a claimant's COPD because of inhalation of dust, when the record showed that there was an aggravation. In this case, Dr. Holmes testified that there was no aggravation. Yet when you look at the actual records showing that he was able to return back to work beforehand, his pain was always reduced down to a two out of three before. But afterwards, he had a sprained ankle. He had swelling. He had an MRI showing a tear in the ligament, which confirmed the derangement. There was evidence of allodemia, color changes, things that even the temperature changes, that Dr. Holmes testified that if he had those changes, it could show an aggravation. But most importantly, this opinion is contradicted by Holmes' admission that prior to the accident, Jesus was able to work medium duty as a landscaper. Yet after the accident, after September 24, 2010, he was unable to work as a landscaper. He was limited to sedentary duty or was unable to work at all if they couldn't accommodate that restriction. Those two opinions can't coexist. It can't be severe and uncontrolled before and after. So what are you saying? Are you saying that Holmes' opinion was inherently contradictory? Holmes' opinion was not supported by the record at all, and his opinion was contradicted by his own testimony and his deposition. All of which was presented to the commission, correct? Correct. However, as you know, the appellate court must impartially review the record and see if the commission's decision was based upon that evidence and if there was support for this opinion. There was no support for this opinion. And also, here's also another conflict within this decision. How can there be, which was, you said that for causation, the commission found that CRPS was severe and intractable before and after September 24, therefore there was no aggravation. Yet for the accident, they found no accident because after the fall, he was able to walk, able to landscape, was not limping or showing any signs of injury. How can both be, both can't exist. The decision is internally flawed. Well, it isn't just, it doesn't come from Holmes. The owner of the company's wife testified that she had an occasion to see the claimant after the accident and she didn't notice any limping, correct? She did testify to that, right? She testified to that and she said he would have come in. And the commission, I think, said that, well, that means she actually saw him. But she then testified she doesn't remember seeing him. She doesn't remember where she was. She doesn't remember who she saw or who she spoke to. Her testimony is underlined. What do you make of the size of the hole? The claimant said he stepped in a hole up to his knee and Robert, the owner, said he went right out there and there was some small hole. So what, and the commission apparently believed him, right? Yes. And that's actually the basis of our fraud. One of the big pieces of our fraud case that is pending, which we just had a hearing yesterday on pleadings before the DuPage court. That was, and that's one of the problems. And that's one of the reasons I did a motion to stay and a motion to consolidate because there was evidence afterwards that showed a large hole that Robert testified he first, he never saw and he never took any pictures of, yet in the third-party case, we were able to get records from them, which he took or his associate took, that showed a large hole of where he said he fell. I know that we're confined to what we have before the record here, but I think it's also an affront to justice that the truth wasn't really presented. Counsel, you know, you're getting hung up on things that are manifest weight issues, but you have an issue in your brief that I think bears some discussion, and that's the issue that the arbitrator went outside of the record and made observations outside of the courtroom in order to base her decision on it. And I think the section that you're referring to reads, the arbitrator observed the petitioner at varied times before, during, and after the hearing dates. Outside of the hearing room, petitioner was observed talking comfortably and exhibiting no pain behavior like grunting, grimacing, or shifting his weight from side to side, as he constantly did as if I'm cue in the hearing room. Instead, the petitioner was standing without the use of crutches or slightly leaning against the wall, et cetera, and so on. So now the question becomes, if a trier of fact goes outside of the record and relies on what the trier of fact finds outside of the record, is that the basis for automatic reversal and remand for a new hearing? Not automatic. I believe that if the arbitrator had indicated that he saw this on the record and brought that observation to the hearing. No, we understand that. We understand that this was not brought to the attention of anybody during the hearing. Right. Now, okay, so even still, the case law screen, it says that if evidence, extrajudicial investigation provides evidence that contradicts information that is in the record or may negatively impact a critical issue in the case, which is the credibility of the petitioner, it is an automatic reversal. Well, the reason why I ask the question is I don't think there's absolutely any question based on the arbitrator's decision that was approved by the commission that this case was decided based on the finding that your client was absolutely incredible. Correct. And he was not believed. And this section of the arbitrator's decision, which was affirmed and adopted by the commission, seems to suggest that evidence contradicting your claimant's testimony as to the extent of his injury and the pain that he's suffering was discovered by the arbitrator totally outside of record. The case law is clear that when that occurs, it has a decision, a new trial is required, and the prevailing party has a duty to prove prejudice or to show that there was no prejudice. And in this case, the respondents failed to try to present any evidence that Jesus was not prejudiced by this extrajudicial investigation. And I cited the cases throughout there that provide the basis for that. Would you say that's your strongest argument? That is the strongest argument as well. I mean, the second strongest for reversal is that there is the decision is devoid of Dr. Tuvik's deposition. Now, that was your strongest argument, right? Yes, Your Honor. And you're out of time. And so why did you focus on the whole subject? I was answering Your Honor's questions. Oh, okay. Thank you. You have time in reply. Thank you. May it please the court, counsel. My name is Valerie Piler, and I represent the respondent R&R Properties. The commission's decision is essentially based upon two findings with respect to no causation and no accident. With respect to the issue of accident and in response to the most recent line of questioning from the court, there is independent evidence, irrespective of the arbitrator's findings, that would establish clearly that Petitioner was not credible in this instance. Well, yeah, but wait a minute. Hold on a second. Do you think an arbitrator has a right to do what this arbitrator did? Yeah. And are you going to rely on it? Well, my argument would be, though, that in this instance it is the commission that is the finder of facts. Well, they adopted this, though. They approved it and they adopted it. Correct. But there are other elements on which the commission relies. Well, you know, ma'am, many times in cases where you've got an obvious improper behavior on the part of a judge, there's plenty of evidence in the record that could have supported the decision, but we turn around and say, oh, this violates his right to due process. If this arbitrator had revealed this in the course of the hearing, he would have had an opportunity to combat the argument and say what actually happened down the hallway. I mean, this is like checking and raising a card game. It just doesn't work. I don't understand how this decision can stand in the face of what this arbitrator did. Well, Your Honor, I would focus on the fact, first of all, when inadmissible evidence is offered or is incorporated into the decision, it is not axiomatic that it has to be. It's not only a question of inadmissible. It's a question of it was never brought out in the hearing. This is an extrajudicial finding on the part of the arbitrator that goes to a critical issue in this case, and that's the credibility of the petitioner. And I don't understand how this arbitrator could have done it or how the commission could have overlooked it. Counsel, does the record reflect when and where these observations were made by the arbitrator? The record does not, Your Honor. The sole mention of it, and obviously, therefore, a respondent was unaware that this was happening. The sole mention of it is in the arbitrator's decision. Which states that it occurred outside the hearing room. Right. And I did not try the case, Your Honor, so I'm not aware of what periods of time that might have incorporated, other than it references within the courtroom and then also outside the courtroom. There were two dates of hearing, so within that time frame, I cannot specifically state what periods of time that the arbitrator was referencing. I'm unfamiliar with this arbitrator. Is he a new arbitrator? I believe this is Arbitrator Carlson, Your Honor. No, he is not. Okay. Go ahead. I would at least offer, Your Honors, that there are four uncontroverted facts that would, independent of anything else and very strong at facts, that would show the petitioner is not credible. First and foremost, petitioner testified under oath to a June 2010 accident. And then in the middle of the second hearing, they voluntarily dismissed that because the evidence was so overwhelming that no such incident had occurred. I would respectfully suggest that that credibility issue right there is sufficient to establish that the petitioner's testimony in total was not credible, irrespective of the arbitrator's finding. The second uncontested fact is the fact that the petitioner did not go for treatment for a week. And, again, that would have no bearing on his credibility. That is completely independent of the credibility finding, that he did not seek treatment despite, as you've noted, the numerous pre-accident or pre-alleged accident emergency room treatments. So, again, this is a fact that suggests no accident occurred, or establishes no accident occurred, irrespective of the petitioner's credibility. The third element is that there was the substantial buyout of petitioner's medical rights from the original 1996 accident. And this amount of money clearly contemplated that petitioner was going to need medical care for the rest of his life. So the premise that petitioner's condition had stabilized, the premise that the petitioner's situation was very low key, pain levels of 0 and 1, is simply not worn out by the fact that a prior respondent paid this gentleman almost $300,000 for future medical care approximately just three years before this alleged date of accident. And, finally, the fourth fact that would support this is that the treatment of 9-21-10, just three days before this date of accident, shows that petitioner's leg was, in fact, so bad at that time that he required crutches. And then when petitioner was asked on trial testimony where did the crutches come from, he would not testify because it was pre-accident treatment. It was on 9-21 that his leg was found to be so severely painful and compromised that he was not allowed to put his foot down on the ground. And yet three days later, allegedly, he is mowing the lawn and falls into this hole. And there is quite a discrepancy about the hole, too. He himself testifies. At one point, he went under his knee. Another time, it's only one inch. So those four undisputed facts, which have nothing to do with petitioner's actual credibility as a witness, all support the idea that there was no accident. Even if there is concern about the arbitrator's actions with respect to credibility, the issue of causation would also result in the same finding of no liability. And in this instance, petitioner's credibility is really not a factor. In that instance, it's all the credibility of the physicians. Dr. Tubick and Dr. Holmes both testified. The commission clearly credited the testimony of Dr. Holmes. Dr. Holmes reviewed hundreds if not thousands of pages of medical records in very significant detail, very, very minute attention to detail. Dr. Tubick did not review actual records. Dr. Tubick reviewed Dr. Holmes' summary of the records. The commission was perfectly capable and perfectly justified in crediting Dr. Holmes' opinions over Dr. Tubick's opinions. And again, this issue of causation would again result in the denial of all benefits, irrespective of the outcome of the finding as to accident. So what you're saying is assuming credible claimant, assuming an accident, the nature and extent of his injuries were not caused by that incident. Right. And going to counsel's point that it would go down to a zero or a one after every emergency room treatment. Well, yes, he's on the law. He's on Mt. Norco. He's on intravenous opiates. After every emergency room visit, it does go back to zero or one. But there's an emergency room visit every four to six weeks. Are you saying that there wasn't any evidence supporting causal connection in this case? Dr. Tubick did say that there was causal connection. But my point to that would be that he did not actually review these records. He reviewed Dr. Holmes' summary of these records. And the commission was therefore perfectly justified in relying on Dr. Holmes, who is board-certified, extensive experience, treats RSD patients, although he is an orthopedic surgeon, and rendered quite a well-reasoned and well-documented opinion about why this is not causally related because there is no change from the pre-alleged accident course of treatment and symptoms. Mr. Chavez's course of symptoms is up and down, up and down. And virtually every record says, I ran out of medications, which goes to some allegations in those records of drug-seeking behavior as well. So it's not like he was steady that, you know, there was like just family doctor treatment. It's emergency room, emergency room, emergency room. And after the alleged accident, it's emergency room, emergency. So by nature, this condition is an up and down kind of condition, and Dr. Holmes is basically saying it was up and down before, it's up and down now. But the severity, the range, the high and the low is essentially the same, and so there is no aggravation or acceleration. The final comment I would like to make is that this court is, in fact, limited to the record that is before it. Counsel has raised multiple elements of civil actions that are not inherent in this action, and Respondent respectfully suggests that the nature of administrative review confines this honorable court to the record before it, before the Illinois Workers' Compensation Commission, and that based upon that record, the commission probably found no accident and no causal connection, denied all benefits, and we would ask that that decision be affirmed. Thank you, counsel. Counsel, you may reply. Can you start with the last argument by opposing counsel? She indicated that irrespective of the finding of no accident, that the no causal connection decision remains unaffected by whatever observations and actions the arbitrator took outside of the hearing room. What do you say to that? In terms of the no causal connection from Dr. Holmes, the commission relied solely on Dr. Holmes' opinion, didn't cite Dr. Tektubik's deposition whatsoever. It's not cited anywhere in the decision. If you look at the deposition testimony, he didn't even rule on the objections that were made. His opinion, he said, he first said that there was no, first he said there was an aggravation in his first report based upon a reasonable degree of medical certainty. Then he said that there was no aggravation, but then he said it was not a significant aggravation, and one of the other bases is because the prior condition had not resolved. Under the law in terms of preexisting conditions, it doesn't have to have completely resolved for a preexisting aggravation to be compensable, and it doesn't have to be a significant aggravation. It just has to be a aggravation. And then again, his testimony that there was no aggravation is contradicted by his own test, by the records which show that before, and his own testimony that before the accident, he was able to work medium duty on landscape and the CRPS was mild. But then afterwards, he couldn't work landscaping. He couldn't do moderate duty. He was limited to sedentary duty or be off work. So how could there have not been a worsening of his condition? It doesn't make much sense. Plus, the respondents testified in the deposition, their testimony, that there was no, that they never knew or observed him, that they were having any problems and didn't even know of a prior accident prior to September 24th. So if it was as bad as they said that as it was in September, they bring up September 21st. Yet September 21st, he was discharged with zero pain, which is consistent with his testimony, and in good, stable condition. And when you look at the records I cited in our brief, it always talks about stable condition and that the CRPS was not symptomatic before the accident or minimized or reduced greatly with the treatment. So his opinion has no, there's no basis for his opinion. The commission also could have taken the arbitrator's decision and could have adopted it in its entirety and struck out the extrajudicial investigation. That would have saved their decision. They also could have said, well, we reviewed both Dr. Tubick's deposition and Dr. Holmes' deposition, and we find Dr. Holmes' deposition, Dr. Holmes more credible. They didn't even say that, which means that they didn't even review the evidence. So for those reasons, we believe that the decision should be reversed for an entirely new trial before a totally different commissioner or a different arbitrator. Thank you, counsel, both for your arguments in this matter. We take them under advisement and written dispositions shall issue. The court will stand on recess. Brief recess.